UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS CHRISTOPHER ACKERNECHT,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No.  2:24-cv-3096-SCR

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401, *et seq*.[1]  For the reasons that follow, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion.

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB on September 7, 2021, alleging disability beginning February 19, 2020.  Administrative Record ("AR") 17.[2]  The application was disapproved initially on September 21, 2022, and on reconsideration on January 12, 2023.  AR 17.  On December 19,

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986).

[2] The AR is filed as ECF No. 9 (AR 1 to AR 624).

1

2023, ALJ Lisa Martin presided over a telephonic hearing on Plaintiff's challenge to the disapprovals.  AR 34-62 (transcript).  Plaintiff appeared with Karl Osterhout as counsel and testified at the hearing.  AR 34-35, 39.  Vocational Expert ("VE") Gregory Jones also testified. AR 35, 39.

On January 22, 2024, the ALJ issued an unfavorable decision, finding Plaintiff "not disabled" under the Act.  AR 17-29 (decision).  On September 10, 2024, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  AR 1-5 (decision and additional exhibit list).

Plaintiff initiated this action on November 8, 2024.  ECF No. 1.  The parties filed cross-motions for summary judgment based on the AR filed by the Commissioner.  ECF Nos. 12 (Plaintiff's motion), 17 (Commissioner's motion).[3]  Plaintiff filed a reply brief on May 19, 2025. ECF No. 18.

## II.  FACTUAL BACKGROUND

Plaintiff was born on February 11, 1964, and accordingly was, at age 59, a person of advanced age under the regulations as of the December 19, 2023 hearing.  AR 40; *see* 20 C.F.R §§ 404.1563(e).  Plaintiff finished three years of college and can communicate in English. AR 202, 204.  He worked as a facility manager at a woodworking business from 1987 to 2011, a health care facility production manager from 2012 to 2020, and a coach's assistant from 2013 to 2022.  AR 204.  Asserted conditions include Type I diabetes, arthritis in both shoulders to the point that they need to be replaced, neuropathy in both feet and hands, and dependency on unspecified medications.  AR 203.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

---

[3]  Plaintiff also filed a "Statement of Undisputed Facts" in support of his motion.  ECF No. 13. This statement, however, cites portions of his subjective testimony before the ALJ as if they are inherently true, despite the ALJ discounting Plaintiff's subjective testimony and Plaintiff contesting this aspect of the decision.  See *infra* VI.A; ECF No. 13 at 4.

Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Substantial evidence "means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation and citation omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *see also Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quotation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

3

# IV. RELEVANT LAW

DIB is available for every eligible individual who is "disabled." 42 U.S.C. § 423(a)(1)(E). Aside from blind individuals over the age of 55, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id.*, §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.*, §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

4

disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2026.
>
> 2. The claimant did not engage in substantial gainful activity since February 19, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: bilateral shoulder degenerative joint disease with rotator cuff tears, bilateral hip osteoarthritis, and diabetes with diabetic neuropathy (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of sedentary work as defined in 20 CFR 404.1567(a), except as follows. The claimant needs an opportunity to change positions throughout the workday as often as every 30 minutes for 1-2 minutes. He can never climb ladders, ropes, and scaffolds, and is precluded from all exposure to dangerous work hazards such as unprotected heights and exposed moving machinery. He is limited to performing the remaining postural activities occasionally. He can never reach overhead with the bilateral upper extremities, but he can perform frequent, not constant, reaching forward, handling, fingering, and feeling tasks. He must avoid all exposure to extreme heat, humidity, and cold conditions, and avoid all fast assembly quota pace work (i.e., fast assembly line environment where one's work impacts down the line). The claimant will be off task up to 3% of the workday due to momentary symptom distractions.
>
> 6. The claimant is capable of performing past relevant work as a production manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from February 19, 2020, through the date of this decision (20 CFR 404.1520(f)).

AR 19-28.

## VI.  ANALYSIS

Plaintiff first argues that the ALJ erred in discounting the opinion on Dr. Maylene Peralta, an endocrinologist.  ECF No. 12-2 at 13-14.  He then argues that the failure to properly credit this opinion, combined with a miscategorization of Plaintiff's daily activities, led the ALJ to improperly discount his subjective testimony.  *Id.* at 14-15.  Both his motion and reply brief emphasize that the portion of the RFC at issue is to what extent Plaintiff would either be off-task or miss work due to his impairments, particularly pain.

**A.  The ALJ Committed a Harmless Error When Discounting Subjective Testimony**

1.  <u>Testimony</u>

Plaintiff testified that he was grandfathered into his current part-time work as a coaching assistant at Simpson University, having been one at Simpson Christian School previously.  AR 41.  This work lasts two hours a day, five days a week, from February to April and September to November, with his pay redistributed throughout the year.  AR 41.  The job does not require any physical labor, as he mostly just provides advice to the head coach.  AR 42.

Plaintiff was previously a production manager in the vision industry, which sometimes entailed making some of the smaller components by hand.  AR 43.  He alternated between sitting 75% of the time and walking 25% of the time when on the production floor, lifting infrequently and no more than 20 pounds at a time. AR 43-44.  Before that, he did woodworking for 24 years.  AR 44.  For the first five of those years, he used small cutters and pneumatic devices to assemble small pieces in molds.  AR 44.  Upon being promoted to a manager, he spent half the time sitting and the other half standing.  AR 44-45.  He rarely lifted anything and mostly gave orders to other team members.  AR 45.

Plaintiff testified to having Type I diabetes since 2015 and taking four insulin shots a day to manage it.  AR 45-46.  The medical record depicts this condition as uncontrolled, but Plaintiff testified it had become more controlled in the three months before the hearing.  AR 46.  Temporary improvements in his health, followed by a decline, were a common occurrence over the past three years.  AR 50.

As to his neuropathy, he first reported symptoms to Dr. Peralta two years prior.  AR 46.

Plaintiff now experiences tingling in his fingers and arms, particularly his non-dominant left hand, and even worse tingling and numbness in his feet.  AR 46-47, 50-51.  The degree of pain varies approximately every two days, but he sometimes struggles to walk during the day and go to sleep at night.  AR 47, 51.  At its worst, the pain keeps him from focusing on what he wants to do.  AR 52.  The Lyrica pill he takes for his neuropathy does not help much.  AR 46-47.

Both of Plaintiff's shoulders need to be replaced, though his left is worse than his right. AR 47-48.  Plaintiff cannot lift his arms above shoulder length, and his shoulders occasionally feel "dead," which Plaintiff describes as "drop shoulder[.]"  AR 48, 51.  The only anticipated future treatment is a replacement of his right hip.  AR 54-55.

The ALJ asked how these limitations would affect Plaintiff's ability to work as a manager, when by his own admission that job mostly involved paperwork and little lifting or carrying.  AR 48.  Plaintiff responded "Fatigue, feet issues, and just my mindset."  AR 48.  The constant tingling sensation in his feet would result in a lot of fidgeting and constantly occupy part of his mindset.  AR 48-49.  Meanwhile, how much of his fatigue is due to his diabetes, as opposed to the lack of sleep due to foot pain, is unclear.  AR 52.  Depending on how bad his sleep was the night before, he usually needs a thirty-minute or hour-long nap during the day.  AR 52.

Plaintiff admitted that he stopped working in 2020 because of the pandemic's effect on production, not because of his conditions.  AR 49.  His neuropathy and diabetes worsened in 2021, six months after the layoffs, to the point that he would not have returned to work if the job was available.  AR 49-50.  Even at his current job as an assistant coach, the pain gets bad enough that he either leaves early or misses work between four to six days per month.  AR 53.  He suspects that his superiors only tolerate this because of his sixteen years of experience, and that a new employee would be fired for exceeding the number of allotted sick days.  AR 53-54.

2. Holding

The ALJ held that although Plaintiff's medical impairments can result in the symptoms alleged, evidence in the record was not entirely consistent with Plaintiff's allegations as to their intensity, persistence, or limiting effects.  AR 22.  As an initial matter, despite Plaintiff alleging an onset date of February 2020, the medical record first includes evidence of joint degeneration in

7

his left shoulder in September 2020.  AR 22.  Plaintiff complained of bilateral shoulder pain in 2021, "was assessed with bilateral shoulder arthritis and a left rotator cuff rupture[,]" but refused replacements in favor of more conservative care.  AR 22.  In August 2022, Dr. Matthew Paul noted "positive drop arms" such that Plaintiff could not keep his arm up.  AR 22.  He was again diagnosed with bilateral shoulder osteoarthritis, along with bursitis and rotator cuff ruptures, and again offered shoulder replacement surgery.  AR 22.  Although Plaintiff said he would consider it, the record does not include any shoulder complaints thereafter.  AR 22, 412.

As to Plaintiff's hip pain, he had a left total hip arthroplasty long before the relevant period and purportedly had done very well since.  AR 23, 441.  In July 2022, Plaintiff responded that his condition has improved with use of diclofenac sodium.  AR 23, 461.  Plaintiff discovered mild to moderate degenerative changes of the right hip via X-rays in October 2022.  AR 23.  He was assessed with severe, end-stage arthritis, prompting the recommendation that he have his right hip replaced as well.  AR 23.  The medical record shows that despite being scheduled in December 2022, this has yet to occur as of July 2023.  AR 23, 591-92.  In June 2023, meanwhile, he reported that left hip pain was causing numbness down to his knee and pain from various forms of lower body movement.  AR 23, 588.  This pain improved with Tylenol or ibuprofen, but only somewhat with rest, ice, heat, and elevation.  AR 23, 588.  Dr. Christopher Ludlow observed a "good" range of motion, only "mild" tenderness, and full muscle strength.  AR 23, 589.  His prior implants were still in the right position, though Dr. Ludlow identified some low back arthritic changes that could account for the back pain.  AR 23, 590.

Based on this history, the ALJ held that Plaintiff's shoulder pain was adequately controlled through conservative treatment.  AR 23.  She did credit Plaintiff's assertion that he could not reach above his shoulder, and therefore would struggle with climbing or crawling, by limiting his RFC to "sedentary exertional lifting and carrying of up to 10 pounds and no overhead reaching."  AR 23.  The ALJ also credited Plaintiff's complaints of distracting pain that can result in fatigue.  AR 23.  The RFC therefore precludes fast-paced assembly type work requiring his undivided attention for an extended period, while requiring that Plaintiff be allowed to be off-task for 3% of the day.  AR 23.

The ALJ then held that Plaintiff's hip pain was also well-controlled through conservative treatment.  AR 23.  She nevertheless limited Plaintiff to sedentary exertional work with only occasional stooping, kneeling, and crouching.  AR 23.  The RFC also requires that Plaintiff be allowed to change positions every 30 minutes for one or two minutes to relieve pain and avoid stiffness.  AR 23.

The ALJ then discussed Plaintiff's diabetes and neuropathy.  AR 24.  In April 2021, Dr. Peralta wrote that Plaintiff had complained of polyuria, polydipsia, paresthesia, fatigue, worsening pain, numbness in his toes, and blurry vision.  AR 24, 322.  The examination did not reveal any muscle wasting, and his sensation was intact as to monofilament and vibration.  AR 24, 324.  The following month, however, Dr. Peralta wrote that Plaintiff's neuropathy had worsened due to acute hyperglycemia, and he was prescribed Gabapentin with instructions to increase the dose as needed.  AR 24, 331.  In September 2021, Dr. Peralta reported that the paresthesia was controlled thanks to the Gabapentin.  AR 24, 378.  His glycemic control had also improved.  AR 24, 380.  Dr. Peralta recommended that Plaintiff continue Gabapentin to manage his neuropathy.  AR 24, 381.

In April 2022, Plaintiff reported worsening numbness of his hands up to his elbows even as his glycemic control continued to improve.  AR 24, 366, 368.  Plaintiff was offered an insulin pump to better regulate his glucose levels, but he refused.  AR 24, 368.  Dr. Peralta continued Plaintiff on the same dosage of Gabapentin without any new treatment, aside from electrodiagnostic studies.  AR 24, 368.

In July 2022, Dr. Peralta indicated in a neurological form that Plaintiff has decreased muscle strength and reflexes in all extremities, plus increased numbness and tingling.  AR 24, 401-402.  During a visit to Dr. Vladimir Medina that month, Plaintiff reported that his diabetes was improving thanks to the medicine Dr. Peralta had prescribed.  AR 24, 460.  Limits in range of motion were only reported in the right shoulder.  AR 24, 461.  Upon seeing Dr. Peralta a few weeks later, however, he again reported pain from his left hand to his elbow and increased paresthesia and pain, particularly when he misses a dose of Gabapentin.  AR 24, 455.  The neurologic assessment noted decreased sensation to monofilament and vibration.  AR 24, 456.

Plaintiff agreed to have an insulin pump installed and to combine his Gabapentin prescription with Lyrica to address his neuropathy. AR 24, 456-57.

Plaintiff received the insulin pump by October 26, 2022, when he was advised to stop Gabapentin and increase Lyrica in response to worsening numbness and tingling of both hands and feet. AR 24, 450, 453. Electrodiagnostic studies conducted the day after revealed mild to moderate peripheral neuropathy, plus bilateral median neuropathies at the wrists. AR 24, 574.

In December 2022, Plaintiff was hospitalized briefly for complaints of chest pain, which ceased by the time he was discharged without any changes to his treatment regimen. AR 24, 522. During a pre-op examination on December 20 in anticipation of right hip replacement surgery, Dr. Medina found Plaintiff was "doing well." AR 24, 600.[4]

On March 16, 2023, Dr. Medina categorized Plaintiff's neuropathy as "mild" and his shoulders as "stable" with no complaint. AR 24, 596. On March 21, Dr. Peralta observed that Plaintiff continued to have poor glycemic control, having just received his insulin pump and not yet using it or even starting training to use it. AR 24, 613. Dr. Peralta recommended that he start insulin pump therapy to better regulate glycemia, despite his resistance to it, and to increase his Lyrica dosage. AR 24, 618-19.

In July 2023, Dr. Medina described Plaintiff's diabetes and neuropathy as "stable[.]" AR 24, 592. In August 2023, Plaintiff reported poor glycemic control, in part because he was not using his insulin pump and had difficulty getting accustomed to it. AR 25, 605. His HbA1c was poorly controlled, with the visit's reading at 10.4 and a random glucose level of 184. AR 25, 605. Dr. Peralta told Plaintiff he needed to start insulin pump therapy and stop skipping prandial insulin, which he had been doing for fear of hypoglycemia. AR 25, 610.

Based on these records, the ALJ concluded that Plaintiff's diabetic neuropathy has been adequately controlled via Lyrica since October 2022, even if diabetes itself was not. AR 25. Because the medical record somewhat supported allegations of fatigue, feet numbness, and tingling, the RFC does limit Plaintiff to frequent use of his upper extremities, as opposed to

---

[4] Although the ALJ wrote that Plaintiff was therefore cleared for hip surgery (AR 24), Dr. Medina actually conditioned this on subsequent cardiac clearance (AR 600).

constant use; lifting and carrying only when sedentary; and no exposure to extreme conditions. AR 25.  The limitations in response to Plaintiff's shoulder and hip pain, like prohibiting fast-paced work and allowing him to be off-task for 3% of the workday, also lent themselves to the issues caused by Plaintiff's neuropathy.  AR 25.

The ALJ overall found that Plaintiff's claims about the intensity, persistence, and limiting effects of his symptoms do not suggest that he is unable to engage in competitive work at a reduced exertional level.  AR 25.  Plaintiff was laid off for other reasons in 2020, and the medical record did not support his testimony that his conditions only worsened in 2021.  AR 25.  The ALJ also noted that Plaintiff testified to walking his dogs, driving, shopping, and performing light yard tasks.  AR 25.  Plaintiff also testified to some degree of work activity with occasional standing and moving about, suggesting that his impairments do not entirely preclude work.  AR 25.

The ALJ also noted that the claimant did not pursue shoulder replacement or an insulin pump placement, despite the lack of barriers to treatment.  AR 25.  She cited Social Security Ruling ("SSR") 16-3p, which held that debilitating symptoms generally lead a claimant to pursue various treatments, referrals to specialists, and changes in medication or an increase in the dosage. AR 25.

3.   Governing Law

Evaluating a claimant's subjective testimony is a two-step process.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  *Id.*  Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ can only reject the claimant's testimony about the severity of such symptoms if there are "specific, clear and convincing reasons for doing so."  *Id.* at 1014-15 (internal quotations and citations omitted); *see also Smartt v.*

11

*Kijakazi*, 53 F.4 489, 494 (9th Cir. 2022) (applying this standard even "[w]hen objective medical evidence is inconsistent with a claimant's subjective testimony").

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." *Thomas*, 278 F.3d at 958.

Evaluating the "intensity and persistence" of the symptoms of an impairment will involve considering all available evidence, including "medical history, the medical signs and laboratory findings, and statements about how…symptoms affect" the plaintiff. 20 C.F.R. § 404.1529(a). Relevant factors include:

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms; […]
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; [and]
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.);

20 C.F.R. § 404.1529(c). As to the fourth and fifth factors (i.e., "iv" and "v" directly above), the Ninth Circuit permits ALJs to consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (quoting *Fair*, 885 F.2d at 603); *see also Plummer v. Berryhill*, Case No. 2:16-cv-00753-AC, 2017 WL 2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that "failure to pursue recommended treatment discredited…[plaintiff's] subjective testimony").

An ALJ should not penalize claimants "for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An ALJ can, however, cite a claimant's daily routine to the extent that it is inconsistent with the degree of disability that plaintiff alleges. *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect

difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment).

> 4. The ALJ Erred in Refuting Plaintiff's Testimony Based on Plaintiff's Daily Activities

Plaintiff first argues that errors in evaluating Dr. Peralta's medical opinion inherently taint the ALJ's analysis of his subjective testimony, which must be compared to the record as a whole. ECF No. 12-2 at 14-15. Plaintiff does separately challenge the ALJ's decision to find Dr. Peralta's medical opinions from the Spring of 2022 and the Fall of 2023 unpersuasive. *See infra* VI.B; AR 26-27. Whether this analysis contributed to the decision to discount subjective testimony, however, is unclear. After summarizing Plaintiff's testimony (AR 21-22), the ALJ reviewed the medical record as to each impairment before summarizing how that impairment affected the RFC (AR 22-25). She then found Plaintiff's testimony generally inconsistent with the assertion that he cannot work, citing Plaintiff's daily activities and rejection of various treatment options. AR 25. Only afterwards did she evaluate three medical opinions, the last of which was Dr. Peralta's opinion. AR 25-27. The ALJ's introductory paragraph for this section further implies that these were two separate steps, stating that the ALJ "considered all symptoms and the extent to which these symptoms …[are] consistent with the objective medical evidence" before she "considered the medical opinion(s) and prior administrative medical finding(s)[.]" AR 21.

Plaintiff is correct that the Court "may not affirm the ALJ on a ground upon which [s]he did not rely." ECF No. 12-2 at 4; *Orn*, 495 F.3d at 630. This implies, however, that the inverse is true to some extent. The Court may not infer the ALJ rejected testimony for reasons not articulated in the decision, only to then find that the ALJ erred on such grounds.

Plaintiff does address one reason the ALJ actually provided for rejecting subjective testimony: his daily activities. As a general rule, findings that discredit subjective testimony must "'convincingly justify [the ALJ's] rejection' of the claimant's excess pain testimony." *Fair*, 885 F.2d at 602 (citations omitted). Findings "sufficiently specific to discredit pain testimony" include that "a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting[.]" *Id.* at 603

13

(emphasis original).

Both parties cite *Burch* when arguing whether the ALJ erred in relying on Plaintiff's testimony as to daily activities. Defendant argues that under *Burch*, the ALJ properly discounted pain testimony by finding Plaintiff's daily activities "specifically inconsistent with the claimant's subjective complaints about disabling limitations." ECF No. 17 at 12 (citing 400 F.3d at 680-81). Plaintiff responds that the Ninth Circuit only accepted that interpretation in *Burch* because of the "minimal objective evidence" in support of the claimant to begin with. ECF No. 18 at 3-4 (citing 400 F.3d at 680).

The Ninth Circuit in *Burch* rejected the plaintiff's argument that the ALJ had only relied on "the minimal objective evidence and Burch's daily activities in discrediting her testimony." *Id.* It then focused on each reason in turn, starting with said daily activities. The Ninth Circuit held that reliance on such activities is proper when they "involv[e] skills that could be transferred to the workplace" and the ALJ "mak[es] specific findings relating to those activities." *Id.* at 681.

The ALJ here does not adequately make such specific findings. She initially notes that Plaintiff "walk[s] his dogs, drives, shops, and performs light yard work" without explaining how they reflect skills transferrable to the workplace. AR 25. The ALJ does later explain that driving and house work require the use of both arms and hands as well as some bending and stooping. AR 27. As Plaintiff notes, however, an ALJ should not assume that the ability to perform these tasks for moments at a time implies the ability to perform these tasks on a regular and continuing basis, as required in a workplace environment. ECF No. 12-2 at 15; *Garrison*, 759 F.3d at 1016.

The ALJ erred in citing Plaintiff's daily activities as a basis for finding him capable of remaining on-task for 97% of a workday.

### 5.   The Error Was Harmless

In *Stout v. Comm'r of Soc. Sec.*, the Ninth Circuit concluded that an error is harmless when it is "inconsequential to the ultimate nondisability determination." 454 F.3d 1050, 1055 (9th Cir. 2006). The Ninth Circuit has clarified that the "relevant inquiry…is not whether the ALJ would have made a different decision absent any error … it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d

14

1155, 1162 (9th Cir. 2008).  Multiple reasons for a particular conclusion can render an error in one harmless because the others provide "a basis for the court to review the ALJ's decision[.]" *Id.* at 1163; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence[.]'") (internal citations omitted).  If an ALJ provides multiple "record-supported reasons for discrediting the claimant's testimony," an error in any one reason is harmless on its own.  *Stout*, 454 F.3d at 1055 (citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir.2004)).

As discussed above, the ALJ erred in the assessment of Plaintiff's daily activities.  Alternatively, however, the ALJ noted that Plaintiff had failed to pursue treatment options like an insulin pump and shoulder replacement surgery.  AR 25.  As Defendant notes, the Ninth Circuit reaffirmed in *Burch* that when a plaintiff's back pain was "not severe enough to motivate" plaintiff "to seek [these forms of] treatment," or even be recommended certain remedies like surgery, an ALJ may cite this as evidence that pain was not as severe as the plaintiff alleged.  ECF No. 17 at 10; 400 F.3d at 681 (quoting *Fair*, 885 F.2d at 604); *see also Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 2017) (quoting *Fair*, 885 F.2d at 603) ("Failure to follow prescribed treatment may 'cast doubt on the sincerity of the claimant's pain testimony.'").

Plaintiff's arguments imply that the Court should treat the amount of time he would be off-focus or need to miss work and his other impairments as separate and distinct problems.  ECF Nos. 12-2 at 13, 18 at 3.  At minimum, however, Plaintiff's own testimony connects this impairment to his diabetes and the proposed insulin pump.  Plaintiff testified that, "Fatigue, feet issues, and just my mindset" would be the primary factors keeping him from focusing on even sedentary work.  AR 48.  Dr. Medina noted in March 2023, however, that the neuropathy responsible for his foot pain was "most likely related to his uncontrolled diabetes[,]" particularly as his hemoglobin A1c was unusually high.  AR 596.  Plaintiff further admitted during the hearing that two likely contributors to his fatigue were his diabetes and the same foot pain keeping him awake at night.  AR 52.

As early as April 2022, doctors recommended Plaintiff use an insulin pump to better

15

regulate his glucose levels, thereby addressing his diabetes and his neuropathy. AR 24, 368. Plaintiff did not agree to have this pump installed until July 2022. AR 24, 457. Plaintiff received the pump in October 2022, but was "not using it" in March 2023 and "not using it" in August 2023. AR 605, 613, 618. Doctors instructed him to "schedule training for the pump ASAP" in March 2023, though it appears he did not do so as he continued to note he need training in August 2023. AR 605, 610, 618. In short, in the record shows Plaintiff initially delayed agreeing to install a pump for several months, and then did not pursue training that would have allowed him to use it effectively for approximately ten months. The ALJ was justified in discounting Plaintiff's averred symptoms based on this delay.

Plaintiff's failure to timely pursue treatment as to his diabetes and neuropathy justifies discounting his testimony regarding their limiting effects. Any error in also discussing Plaintiff's activities is therefore harmless and does not affect the validity of the RFC.

**B. The ALJ Committed a Harmless Error in Discounting Dr. Peralta's Opinion**

1. Opinion and Holding

Dr. Peralta's two medical reports were the last two opinions the ALJ weighed in the RFC analysis. AR 26-27. The first report was based on medical records from April 2012 to April 2022. AR 401. Dr. Peralta observed decreased reflexes in all extremities and rated tremors in all four as 2 out of 5, or "active movement of the body part with gravity eliminated[.]" AR 401. Dr. Peralta wrote that Plaintiff's neuropathy led to a decrease in his ability to use his arms, as well as numbness and tingling from hands to elbows. AR 402.

Dr. Peralta opined that Plaintiff could lift and carry no more than 5 pounds, even occasionally. AR 404. He could only stand or walk for 1.5 hours total in an eight-hour workday. AR 404. Plaintiff could sit for more than 6 hours in an 8-hour workday but would need to switch between sitting and standing, though normal breaks would provide sufficient relief to this end. AR 404. He could occasionally stoop, up to a third of a workday, but never climb, balance, kneel, crouch, crawl, reach, handle, finger, or feel with his hands. AR 405. Dr. Peralta advised Plaintiff to avoid heights, moving machinery, and temperature extremes. AR 405.

In an October 2023 Physical Capacity Evaluation, Dr. Peralta asserted that her previous

16

report was no longer a fair reflection of Plaintiff's functioning.  AR 584.  She then asserted that Plaintiff can walk less than 2 hours per 8-hour workday, in intervals of 15 to 30 minutes with breaks lasting 5 to 10 minutes in between.  AR 584.  The same applied to Plaintiff's sitting.  AR 584.  Plaintiff could lift only up to 10 pounds and could only occasionally finger, grasp, reach, handle, or feel with either hand.  AR 585.  Dr. Peralta estimated that Plaintiff would "frequently" require breaks during the workday aside from two 15-minute breaks and a 30-minute lunch break.  AR 585.  She further opined that Plaintiff would have more than four "bad days" per month where his symptoms would prevent him from completing an 8-hour workday.  AR 585.

The ALJ did not find either opinion persuasive.  AR 27.  She held that Plaintiff's ability to dress, groom, bathe, and feed himself implied the ability to use both hands and arms and to bend or stoop.  AR 27.  The ALJ also found Dr. Peralta's opinion inconsistent with Plaintiff's ability to drive, including opening the doors, getting in and out of a car, and steering a wheel.  AR 27.  The ALJ also found it inconsistent with Plaintiff's ability to work as a softball coach.  AR 27.

Finally, the ALJ found Dr. Peralta's opinion inconsistent with the opinions of Dr. J. Allen and Dr. E. Trias, the state agency medical consultants.  AR 25-27.  Dr. Allen had found that Plaintiff could perform sedentary exertional work, standing 2 hours and sitting 6 hours in an 8-hour workday.  AR 25-26.  Dr. Trias similarly opined that Plaintiff could stand or walk 4 hours in an 8-hour workday.  AR 26.  The ALJ found these opinions persuasive to the extent that they suggested Plaintiff was best suited to sedentary exertional work.  AR 26.

The ALJ also questioned how Dr. Peralta's own statements within her reports support her final conclusion.  AR 27.  After discussing the numbness caused by Plaintiff's neuropathy, for example, she admits that she could not attest to whether there was any atrophy because she did not conduct an examination during her most recent visit.  AR 27, 402.  The ALJ also held that Dr. Peralta's own clinical notes do not reflect the 2-out-of-5 tremors she reported in her first assessment.  AR 27 (citing AR 324, 452, 616).

2.  Governing Law

In evaluating medical opinion evidence, ALJs give no specific evidentiary weight to any particular type of opinion or source, but instead must consider and evaluate the persuasiveness of

17

all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are defined in the regulations as follows:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.* In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.*

18

(citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

### 3. The ALJ's Analysis of Dr. Peralta's Opinion Was Sufficient

Plaintiff cites *Sparks v. Kijazaki* and *Peter H. v. Kijazaki* to argue that the ALJ does not meet her burden by citing evidence that purportedly supports her analysis without explanation. ECF No. 12-2 at 13 (citing 2022 U.S. Dist. LEXIS 176139, at *19 (E.D. Tenn. Sept. 28, 2022); 2022 U.S. Dist. LEXIS 104040, at *7 (N.D. Ill. June 9, 2022)). The ALJ in *Sparks* merely found one opinion more persuasive than the other "given the additional evidence upon review" and did not explain why this evidence favored the more persuasive opinion. 2022 U.S. Dist. LEXIS 176139, at *21-*22. This left the court "unable to ascertain whether the ALJ properly considered the supportability and consistency" of each opinion. *Id.* at *23.

The ALJ here provides more substantial explanations for her analysis than the ALJ in *Sparks*. As to supportability, she explains that Dr. Peralta admitted she did not examine Plaintiff, at least for muscular atrophy. AR 27, 402. She further asserted that past records do not explain how Dr. Peralta rated Plaintiff's tremors as "active movement of the body part with gravity eliminated[.]" AR 27, 401.

As for consistency, the ALJ cited two ways in which Dr. Peralta's opinion was inconsistent with the record. As to the first of these, daily activities, Plaintiff reiterates that the ALJ cannot assume that isolated activities reflect the degree of exertion required during a full workday. ECF No. 12-2 at 14; *Garrison*, 759 F.3d at 1016. Although the Court again agrees, this error may again be harmless if the ALJ provided another adequate reason for finding Dr. Peralta's opinion inconsistent with the record. *See supra* VI.A.4-5; *Stout*, 454 F.3d at 1055.

The ALJ also found Dr. Peralta's opinion inconsistent with the opinions of two state medical examiners. AR 25-27. Plaintiff concedes that these opinions are inconsistent, but argues these particular inconsistencies do not pertain to Dr. Peralta's finding as to how often Plaintiff will be off-task or absent from work. ECF Nos. 12-2 at 13, 18 at 4. The ALJ was not required to address that particular subject directly in making inconsistency findings. Source-level articulation permits an ALJ to consider all the medical opinions from a single medical source "together in a single analysis using the [five] factors listed" in the regulations, as opposed to

19

"each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Courts in this Circuit have held that this also excuses ALJs from considering "each aspect of a doctor's medical opinions on a line-by-line or opinion-by-opinion basis." *Jamie Allen W. v. O'Malley*, Case No. 4:23-CV-00202-REP, 2024 WL 1465924 at *7 (D. Idaho Apr. 4, 2024); *see also Kimberly C. v. Comm'r of Soc. Sec. Admin*, Case No. 3:24-cv-01624-CL, 2025 WL 2860639 at *6 (D. Or. Oct. 9, 2025) (requiring no separate discussion of a doctor's recommended limitation "of sitting for four hours in an eight-hour workday for thirty minutes at a time" when the ALJ had adequately found the opinion as a whole unpersuasive). In any case, as discussed above, Plaintiff's ability to separate the pain that distracts and fatigues him from his other impairments is tenuous as best. *See supra* VI.A.5.

The inconsistencies between the medical opinions provided enough reason to find Dr. Peralta's opinion less credible, particularly when the ALJ also identified supportability issues. Any error in finding Plaintiff's daily activities inconsistent with Dr. Peralta's opinion is therefore harmless. The ALJ sufficiently justified her decision not to adopt Dr. Peralta's findings, including that Plaintiff would miss work four times a month. AR 27. An RFC instead finding that Plaintiff would only be off-task for 3% of an average workday was permissible.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is DENIED;

2. Defendant's cross-motion for summary judgment (ECF No. 17) is GRANTED;

3. This Commissioner's final decision in this matter is AFFIRMED; and

4. The Clerk of the Court shall enter judgment for the Defendant and close this case.

DATED: January 29, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

20